UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SHERRY MICHON, | | ) |
| | Plaintiff | ) |
| | | ) |
| | | ) |
| v. | | )   Civil Action No. 10-30152-KPN |
| | | ) |
| | | ) |
| MICHAEL J. ASTRUE, | | ) |
| Commissioner of Social | | ) |
| Security Administration, | | ) |
| | Defendant | ) |

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE, TO
REMAND and DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE
COMMISSIONER (Document Nos. 13 and 17)
September 14, 2011

NEIMAN, U.S.M.J.

This is an action for judicial review of a final decision by the Commissioner of the

Social Security Administration ("Commissioner") regarding an individual's entitlement to

Social Security Disability Insurance ("SSDI") benefits and Supplemental Security

Income ("SSI") pursuant to 42 U.S.C. §§ 405(g) and 1381(c)(3).  Sherry Michon

("Plaintiff") asserts that the Commissioner's decision denying her such benefits --

memorialized in a March 23, 2010 decision of an administrative law judge -- is not

supported by substantial evidence.  She has filed a motion for judgment on the

pleadings or, in the alternative, to remand, and the Commissioner, in turn, has moved to

affirm.

The parties have consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. For the following reasons, the court will deny the Commissioner's motion to affirm and allow Plaintiff's motion to remand.

## I. STANDARD OF REVIEW

A court may not disturb the Commissioner's decision if it is grounded in substantial evidence. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evidence is such relevant evidence as a reasonable mind accepts as adequate to support a conclusion. *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981). The Supreme Court has defined substantial evidence as "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (citation and internal quotation marks omitted).

The resolution of conflicts in evidence and the determination of credibility are for the Commissioner, not for doctors or the courts. *Rodriguez*, 647 F.2d at 222; *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir. 1987). A denial of benefits, however, will not be upheld if there has been an error of law in the evaluation of a particular claim. *See Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In the end, the court maintains the power, in appropriate circumstances, "to enter . . . a judgment affirming, modifying, or reversing the [Commissioner's] decision" or to "remand [ ] the cause for a rehearing." 42 U.S.C. §

2

405(g).

## II. BACKGROUND

Plaintiff filed for SSDI and SSI benefits on June 23, 2008.  (Administrative Record ("A.R") at 102-16.)  Plaintiff claimed that she was disabled due to learning disabilities, a hip injury, depression and anxiety.  (A.R. at 55.)  After Plaintiff's claim was denied both initially and upon reconsideration, she requested a hearing in front of an administrative law judge ("ALJ"), which occurred on February 17, 2010.  (A.R. at 7.)

At the time of the hearing, Plaintiff, thirty-seven years old, testified that she graduated an alternative high school with very small classes, and that, despite completing twelfth grade, she was in "special ed classes all the way through school." (A.R. at 35-36, 157.)  Plaintiff also testified that she was unable to pass the class for her GED.  (A.R. at 36.)  Plaintiff further testified that she cared for her now adult son and that no one had ever attempted to have him removed from her care.  (A.R. at 43.) Plaintiff also submitted documents indicating that she had worked part-time as a cashier, housekeeper, kitchen helper, and personal care assistant.  (A.R. at 42, 43, 151.)

At the hearing, the ALJ posed to a vocational expert a hypothetical involving an individual with Plaintiff's age, education, and work experience and similar physical and mental limitations, namely, an individual who "can sit for a maximum eight hours a day, with about one hour at a time max," who can stand or walk for "two hours max -- or two hours at a time for six hours max," and who requires the use of a cane for standing and walking.  (A.R. at 36-42.)  In that regard, the ALJ noted that, because "handling, fingering, feeling, most of that's going to be done from a seat[ed] position. . . no

3

limitations in the use of hands or arms except for use of [a] cane." (A.R. at 37.)  The

ALJ added that there must be "no use of heavy machinery or driving." (*Id.*)  The

hypothetical also included an individual who: is able to understand and carry out short

and written instructions, can concentrate for a period of time and focus on performing

simple tasks, can interact appropriately with the general public, and is able to

understand and remember simple work-related procedure.  (A.R. at 38.)  The ALJ also

posited that the individual "will require frequent supervision" and possessed no relevant

work experience.  (A.R. at 38-39.)  The vocational expert opined that even "entry level

production type of jobs" would be unavailable to such an individual because of the need

for frequent supervision.  (A.R. at 39.)

      The ALJ then modified this hypothetical to include an individual with the same

limitations previously identified but who would require only occasional supervision.  (*Id.*)

The vocational expert said that such an individual could work as an addresser of

envelopes, a "final assembler," or a semiconductor bonder. (A.R. at 45-48.)  Plaintiff's

attorney then asked the vocational expert whether an individual with less than level one

ability in reading and writing and less than level one ability in arithmetic, and who would

be off task, unsupervised, for fifteen minutes out of every hour could perform any of the

aforementioned jobs.  (A.R. at 48-49.)  The vocational expert responded that reading,

writing, and arithmetic levels less than one would preclude an individual from performing

any of those jobs.  (A.R. at 49.)

      In a decision dated March 23, 2010, the ALJ denied Plaintiff's claim.  (A.R. at 7-

18.)  While acknowledging that a licensed clinical social worker diagnosed Plaintiff with

obsessive compulsive disorder ("OCD") and post-traumatic stress disorder ("PTSD"),

the ALJ found insufficient evidence to conclude that these mental impairments in any way prevented Plaintiff from engaging in any manner of work.  (A.R. at 14.)  Moreover, the ALJ concluded that, in light of other evidence in the record, Plaintiff's low level reading and writing skills were insufficient to warrant a finding that she was disabled.  (A.R. at 14-15.)  Finally, after reviewing each medical professional's evaluation and diagnosis, the ALJ concluded that, although Plaintiff faces both physical and mental limitations, she was not disabled for purposes of the Social Security Act because she was nonetheless able to "engage in some manner of substantial gainful activity."  (A.R. at 15-16.)

Plaintiff was initially informed that the Commissioner's Decision Review Board had selected the ALJ's decision for review.  (A.R. at 1.)  However, because the Board failed to complete its review of Plaintiff's claim within ninety days, the ALJ's decision became final on July 1, 2010.  (*Id.*)  In due course, Plaintiff filed the instant action, the Commissioner compiled the administrative record, and the parties submitted the cross-motions currently at issue.

III.  DISCUSSION

An individual is entitled to SSDI benefits if, among other things, she has an insured status and, prior to its expiration, is disabled.  *See* 42 U.S.C. § 423(a)(1)(A) and (D).  Entitlement to SSI, on the other hand, requires a showing of both disability and financial need.  *See* 42 U.S.C. § 1381a.  Plaintiff's need, for purposes of SSI, and her insured status, for purposes of SSDI, are not challenged.

A.  Disability Standard and the ALJ's Decision

5

The Social Security Act (the "Act") defines disability, in part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  *See also* 42 U.S.C. § 1382c(a)(3)(A) (similar).  An individual is considered disabled under the Act

> only if his physical and mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).  *See generally Bowen v. Yuckert*, 482 U.S. 137, 146-49 (1987).

In determining disability, the Commissioner follows the five-step protocol described by the First Circuit as follows:

> First, is the claimant currently employed?  If he is, the claimant is automatically considered not disabled.
>
> Second, does the claimant have a severe impairment?  A "severe impairment" means an impairment "which significantly limits the claimant's physical or mental capacity to perform basic work-related functions."  If he does not have an impairment of at least this degree of severity, he is automatically not disabled.
>
> Third, does the claimant have an impairment equivalent to a specific list of impairments in the regulations' Appendix 1?  If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.
>
> . . . .

6

> Fourth . . . does the claimant's impairment prevent him from performing work of the sort he has done in the past?  If not, he is not disabled.  If so, the agency asks the fifth question.
>
> Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy?  If so he is disabled; if not he is not disabled.

*Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1982).

In the instant case, the ALJ found as follows with respect to these questions: Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability (question 1); she has impairments which are "severe," namely, complications resulting from fractures to her right leg and hip, herniated disc of the lumbar spine, a learning disorder, depression, anxiety, post-traumatic stress disorder ("PTSD"), and obsessive compulsive disorder ("OCD") (20 C.F.R. 404.1520(c), 416.920(c)), but those impairments do not meet or medically equal one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1 (questions 2 and 3); and she has the residual functional capacity to perform sedentary work, as long as she is not required to sit for more than eight hours a day for no more than an hour at a time or walk more than six hours a day for no more than two hours at a time.  (questions 4 and 5).  Therefore, the ALJ determined, Plaintiff was not disabled.  (A.R. at 9-17.)

B.  Plaintiff's Challenge to the ALJ's Decision

Plaintiff makes two arguments in support of her motion.  First, she argues that the ALJ failed to make a credibility finding regarding Plaintiff's pain and functional limitations.  Second, Plaintiff argues that the ALJ's residual functional capacity assessment is muddled and inconsistent as to her ability to sit, stand, and walk in an eight hour day.  In response, the Commissioner asserts that the record supports the

ALJ's findings.  The court finds Plaintiff's first argument particularly persuasive and, on that basis alone, will grant Plaintiff's motion to remand.

In essence, the court agrees that the ALJ erred by failing to make a credibility determination as to Plaintiff's complaints about pain and functional limitations.  At her hearing, Plaintiff testified that she is "probably" able to sit for as long as forty-five minutes because "of the simple fact that when [she] sit[s] down on the hip part, it starts to feel very uncomfortable and [she] ha[s] pain."  (A.R. at 32.)  Plaintiff also testified that after the forty-five minute period she "would have to get up and try to walk around a few seconds or [she] would have to start putting [her] legs up to make [herself] feel more comfortable so [she is] not sitting on the hip."  (*Id.*)  Similarly, Plaintiff testified that, when sitting at home, she "lean[s] [her] legs over the side of the couch so there's no pressure on that hip."  (A.R. at 33.)  Given Plaintiff's unequivocal testimony that she is only able to sit for about forty-five minutes before needing to stand up or change positions, it is unclear why the hypothetical posed by the ALJ to the vocational expert specified an individual able to sit "about one hour at a time max."  (A.R. at 37.)

To be sure, the Commissioner argues that the ALJ did not find Plaintiff credible and, therefore, discounted this portion of Plaintiff's testimony.  As Plaintiff points out, however,  the ALJ made no credibility determination regarding Plaintiff's complaints about pain or her ability to remain seated.  To the extent any credibility determination can be discerned, it relates almost entirely to Plaintiff's mental conditions, *i.e.*, the ALJ found no support for Plaintiff's allegations that her diagnoses of PTSD and OCD had any "significant impact on preventing [her] from engaging in any manner of work."  (A.R. at 14.)  That finding, of course, does not relate to Plaintiff's complaints of pain.

8

Moreover, the court finds unpersuasive the Commissioner's argument that the ALJ's references to Plaintiff's ability to take care of her own personal needs and those of her cats, as well as to perform a variety of tasks, *e.g.*, manage a savings account and use a checkbook, constituted an adverse credibility determination.  The ALJ relied on such activities only insofar as they evidenced Plaintiff's ability to overcome her learning disability.  The ALJ did not discuss, much less conclude, whether Plaintiff credibly testified as to the pain she endured and how long she was able to remain seated before experiencing pain, questions that bear directly on how disruptive her ailments are to the workplace and whether she would be able to maintain any form of employment.  *See* The Medical Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (explaining that a decision of "disabled" may be appropriate for some individuals under age 45 who are literate and able to communicate English and that such determination "requires an individualized determination that considers the impact of the limitations or restrictions on the number of sedentary, unskilled occupations or the total number of jobs to which the individual may be able to adjust, considering his or her age, education and work experience, including any transferable skills or education providing for direct entry into skilled work.").

The ALJ's conclusion is further undermined by the record evidence, as there is no indication that Plaintiff is able to sit for an hour uninterrupted.  Granted, some of the medical professionals who evaluated Plaintiff's physical limitations did not specify a specific length of time that she would be able to remain seated.  (*See, e.g.,* A.R. at 518 (Dr. Willard Brown, D.O.) (stating that Plaintiff experiences "a lot of pain" and "will have difficulties doing any activities where she would have to stand in any 1 area too long or

have to sit too long or have to walk too far or too fast"); A.R. at 542 (Dr. Bennett Burns, Orthopedic Surgeon) (stating that Plaintiff "cannot stand for prolonged periods of time, nor can she sit in one position and has to change positions frequently due to tightness").)  However, contrary to the ALJ's posed hypothetical, those medical professionals who did address the issue concluded that Plaintiff would be unable to sit for an hour without needing some type of break.  For example, Dr. Elaine Hom, M.D., a state agency physician who performed an assessment of Plaintiff and whose opinion was afforded "significant weight" by the ALJ, noted that Plaintiff "[m]ay need to stretch or shift positions 1-2 minutes several times an[ ] hour as needed."  (A.R. at 383.)  Similarly, Dr. Gino Mercadante, M.D., whose opinion the ALJ afforded "some weight," noted that Plaintiff's pain is "worse with standing, walking, and when she is sitting for more than 10 minutes she needs to . . . relieve the right hip."  (A.R. at 527.)  In all, given the ALJ's failure to make a credibility finding regarding Plaintiff's testimony that she is unable to sit for an hour without needing a break, a fact supported by the record, the vocational expert's testimony relying on the ALJ's flawed hypothetical does not constitute substantial evidence.  *See Arocho v. Sec'y of Health and Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982) ("[I]n order for a vocational expert's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities.").

Finally, given the various physician opinions suggesting that Plaintiff cannot remain seated for more than ten or fifteen minutes, it is plausible that the ALJ on remand will determine that Plaintiff is able to remain seated for far less than even the forty-five minute period to which she testified.  Such conflicts of evidence, however, are

10

better left to the ALJ.  *See Allard v.* Astrue, No. 10-10143-MLW, 2011 U.S. Dist. LEXIS 94783, at *14 (D. Mass. Aug. 24, 2011) (citing *Rodriguez Pagan v. Sec'y of Health and Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987)).  It is enough for present purposes that the ALJ's determination that Plaintiff was not disabled was based on a vocational expert's opinion which was, in turn, based on the ALJ's hypothetical situation which impermissibly posited that Plaintiff could remain seated for an hour.  Accordingly, the court will remand the matter to the Commissioner and will not address Plaintiff's remaining arguments.

IV. CONCLUSION

For the reasons stated, Plaintiff's motion to remand is ALLOWED and the Commissioner's motion to affirm is DENIED.

SO ORDERED.

DATED:   September 14, 2011

/s/   Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge

11